# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

Case No. CIV–18–65–HE

WILLIE B. BATES, II,

Plaintiff,

vs.

STVT-AAI EDUCATION, INC. d/b/a PLATT COLLEGE

Defendant.

## DEFENDANT PLATT COLLEGE'S
## MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

VICTOR F. ALBERT, OBA #12069
BRANDON D. KEMP, OBA #31611
Of the firm:
OGLETREE, DEAKINS,
NASH, SMOAK & STEWART, P.C
The Heritage Building
621 N. Robinson Ave., Ste. 400
Oklahoma City, OK  73102
Telephone:  (405) 546-3757
Facsimile:  (405) 652-1401
Email:  victor.albert@ogletree.com
Email:  brandon.kemp@ogletree.com

***Attorneys for Defendant,***
***STVT-AAI Education, Inc. d/b/a Platt College***

**December 17, 2018**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................... 1

STATEMENT OF UNDISPUTED MATERIAL FACTS ...................................... 2

ARGUMENT & AUTHORITIES ......................................................................... 12

   I.     Standard of Review .................................................................................. 12

   II.    Platt College Is Entitled to A Same Actor Inference. ............................ 13

   III.   The Court Should Enter Summary Judgment in Favor of Platt College on
          Plaintiff's Race-Discrimination Claim. ................................................. 14

    A.    Platt College Can Easily Satisfy the Second Step of McDonnel Douglass,
          Because Platt College Terminated Plaintiff's Employment for Legitimate,
          Non-discriminatory Reasons. ........................................................... 17

    B.    As a Matter of Law, Plaintiff Cannot Establish Pretext. ................. 19

        i.    As a matter of law, Plaintiff cannot point to any comparators who were
              treated more favorably by Platt College. ................................. 19

        ii.   Platt College followed its disciplinary policies. .................... 21

        iii.  Platt College has been consistent in its explanation for Plaintiff's
              termination. ............................................................................ 22

        iv.  Plaintiff's successor does not show pretext. ........................... 24

        v.   Plaintiff's Other Allegations Concerning His Supervisor Are
              Insufficient to Establish Pretext. ............................................ 25

   IV.   The Court Should Enter Summary Judgment in Favor of Platt College on
          Plaintiff's Sex-Discrimination Claim. .................................................. 27

    A.    Plaintiff Cannot Establish a *Prima Facie* Case, Because Platt College Is Not
          "One of Those Unusual Employers" who Discriminates Against Males ....... 27

    B.    For the Same Reasons He Cannot Show Pretext for Race Discrimination,
          Plaintiff Cannot Show Pretext of Sex Discrimination. .................. 29

CONCLUSION ................................................................................................... 29

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                          **Page(s)**

*Adams v. Am. Guarantee & Liab. Ins. Co.*,
    233 F.3d 1242 (10th Cir. 2000) ................................................................. 12

*Antonio v. Sygma Network, Inc.*,
    458 F.3d 1177 (10th Cir. 2006) ................................................................. 13

*Argo v. Blue Cross & Blue Shield of Kansas, Inc.*,
    452 F.3d 1193 (10th Cir. 2006) ........................................................... 18, 27

*Braun v. St. Pius X Par.*,
    827 F. Supp. 2d 1312 (N.D. Okla. 2011) ................................................... 14

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ................................................................................... 12

*Clark v. Cache Valley Elec. Co.*,
    573 Fed. Appx. 693 (10th Cir. 2014) ........................................................ 28

*Clayton v. Vanguard Car Rental U.S.A., Inc.*,
    761 F. Supp. 2d 1210 (D.N.M. 2010) ........................................................ 23

*Cone v. Longmont United Hosp. Ass'n*,
    14 F.3d 526 (10th Cir.1994) ...................................................................... 25

*DePaula v. Easter Seals El Mirador*,
    859 F.3d 957 (10th Cir. 2017) ...................................................... 15, 16, 17

*Dewitt v. Sw. Bell Tel. Co.*,
    845 F.3d 1299 (10th Cir. 2017) ........................................................... 16, 21

*Foster v. Mountain Coal Co., LLC*,
    830 F.3d 1178 (10th Cir. 2016) ................................................................. 18

*Garcia v. DS Waters of Am., Inc.*,
    372 Fed. Appx. 925 (11th Cir. 2010) ........................................................ 18

*Goins v. Bridgeport Hosp.*,
    555 Fed. Appx. 70 (2d Cir. 2014) ............................................................. 18

*Green v. New Mexico*,
    420 F.3d 1189 (10th Cir. 2005) ................................................................. 20

*Hall v. Bellmon*,
    935 F.2d 1106 (10th Cir. 1991) ................................................................... 13

*Holland v. Washington Homes, Inc.*,
    487 F.3d 208 (4th Cir. 2007) ....................................................................... 23

*Howard v. Oklahoma Dep't of Corr.*,
    247 F. Supp. 3d 1210 (W.D. Okla. 2017) ................................................... 26

*Jaramillo v. Colorado Judicial Dep't*,
    427 F.3d 1303 (10th Cir. 2005) ................................................................... 24

*Johnson v. Nordstrom, Inc.*,
    260 F.3d 727 (7th Cir. 2001) ....................................................................... 23

*Johnson v. Oklahoma Dep't of Transp.*,
    645 Fed. Appx. 765 (10th Cir. 2016) ......................................................... 14

*Kendrick v. Penske Transp. Servs., Inc.*,
    220 F.3d 1220 (10th Cir. 2000) ................................................................... 20

*Matthews v. Euronet Worldwide, Inc.*,
    271 Fed. Appx. 770 (10th Cir. 2008) ............................................. 23, 24, 25

*McGowan v. City of Eufala*,
    472 F.3d 736 (10th Cir. 2006) ............................................................. 20, 21

*Piercy v. Maketa*,
    480 F.3d 1192 (10th Cir. 2007) ................................................................... 18

*Robinson v. St. John Med. Ctr.*,
    645 Fed. Appx. 644, 653 (10th Cir. 2016) ................................................. 14

*Ruleford v. Tulsa World Pub. Co.*,
    266 Fed. Appx. 778 (10th Cir. 2008) ......................................................... 22

*Salazar v. City of Commerce City*,
    535 Fed. Appx. 692 (10th Cir. 2013) .................................................... 25, 26

*Sherman v. Klenke*,
    653 Fed. Appx. 580 (10th Cir. 2016) ......................................................... 13

*Smith v. Wynne*,
    494 Fed. Appx. 867 (10th Cir. 2012) ......................................................... 29

*Tabor v. Hilti, Inc.*,
 703 F.3d 1206 (10th Cir. 2013) .................................................................................. 16

*Wright v. Murray Guard, Inc.*,
 455 F.3d 702 (6th Cir. 2006) .................................................................................... 19

*Zamora v. Bd. of Educ. for Las Cruces Pub. Sch.*,
 553 Fed. Appx. 786 (10th Cir. 2014) ........................................................................ 18

## Other Authorities

Fed. R. Civ. P. 56(e)(2) ................................................................................................. 12

FRCP 6(a) ........................................................................................................................ 1

FRCP 56 ........................................................................................................................... 1

FRCP 56(a) ..................................................................................................................... 12

LCvR56.1 .......................................................................................................................... 1

Under Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1, Defendant, STVT-AAI Education Inc. d/b/a Platt College ("Platt College"), moves the Court to enter summary judgment against Plaintiff and in favor of Platt College on both of Plaintiff's claims, namely Plaintiff's claims under Title VII of the Civil Rights Act for race-discrimination and sex-discrimination.[1]

## **INTRODUCTION**

As detailed in this motion, Plaintiff's brief employment as Director of Education at Platt College – North was terminated for the legitimate, non-discriminatory reasons. Specifically, Plaintiff was terminated for his mishandling of and dishonesty regarding an instructor's absence, his improper alteration of a course schedule, and student attrition. Before his termination, Plaintiff was also counseled for communications issues with other Platt College employees and for improper interactions with female students. And, no reasonable jury could find that these reasons were pretext for unlawful discrimination. This is especially so, given that Platt College in entitled to a same-actor inference that it did not discriminate against Plaintiff. Platt College terminated Plaintiff's employment for legitimate, non-discriminatory business reasons, and the Court should enter summary judgment against Plaintiff and in favor of Platt College on all of Plaintiff's remaining claims.

---

[1] The Court's Scheduling Order [Doc. 23], filed July 5, 2018, established the dispositive motion deadline as December 15, 2018. Because December 15, 2018, was a Saturday, under Federal Rule of Civil Procedure 6(a), the true deadline is Monday, December 17, 2018.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

**Background**

1.    Platt College is a private career college with Oklahoma campuses in Tulsa, Oklahoma City, Moore, and Lawton, as well as online programs. (Ex. 1, K. Danyeur Aff., at ¶ 3); (Ex. 2, D. Gilley Aff., at ¶ 3).

2.    The Oklahoma City campus—where the facts and circumstances relevant to this action occurred—is called "Platt College – North." *Id.*

3.    Platt College is a part of the Ancora Education group of career colleges. (Ex. 1, K. Danyeur Aff., at ¶ 4); (Ex. 2, D. Gilley Aff., at ¶ 4).

4.    Platt College is accredited by the Accrediting Commission of Career Schools and Colleges (the "ACCSC") and licensed by the Oklahoma Board of Private Vocational Schools. (Ex. 1, K. Danyeur Aff., at ¶ 5); (Ex. 2, D. Gilley Aff., at ¶ 5).

5.    At the times relevant to this litigation, Ancora Education maintained the Ancora Education Employee Handbook (the "Employee Handbook"), which applied to Plaintiff during his employment at Platt College – North. (Ex. 2, D. Gilley Aff., at ¶ 6).

6.    Among other things, the Employee Handbook included an Equal Employment Opportunity (EEO) section that established "a policy of nondiscrimination with respect to all employees and applicants for employment." At Ancora Education, "[a]ll employment decisions [were] made without regard to race, color, sex (including pregnancy), religion, national origin, age, disability, veteran status, genetic information, or any other status protected by applicable law." *Id.*

7.    The Employee Handbook also provided for workplace discipline in the form of verbal counseling, written warnings, suspensions, and termination. But, the Employee

Handbook was clear that "[c]ertain infractions, unacceptable performance, or behavior may warrant immediate termination without prior disciplinary action." *Id.*

8.      Each Platt College campus is run by an Executive Director, who is the senior campus leader responsible for all campus operations. Each Executive Director reports to Ancora Education's executive management. (Ex. 1, K. Danyeur Aff., at ¶ 6); (Ex. 2, D. Gilley Aff., at ¶¶ 7–8).

9.      During Plaintiff's employment with Platt College, the Executive Director at Platt College – North was Kayla Danyeur. (Ex. 1, K. Danyeur Aff., at ¶ 1); (Ex. 2, D. Gilley Aff., at ¶ 8).

10.      Each Platt College campus also employs a Director of Education, who reports to the Executive Director. The Director of Education is "responsible for education oversight, compliant operations, and quality delivery of services to students leading to successful outcomes." This responsibility includes retention of matriculated students at the Director of Education's campus. The Director of Education's job duties also include "[m]eeting educational outcomes objectives … and ensur[ing] sound academic practices." At the times relevant to this lawsuit, Plaintiff was the Director of Education at Platt College – North. (Ex. 2, D. Gilley Aff., at ¶¶ 9, 18); (Compl. [Doc. 1], at ¶ 9).

11.      Each educational program at Platt College also has its own Program Director. At the times relevant to this lawsuit, the Program Director for the Culinary Arts programs at Platt College – Tulsa and Platt College – North was Jeffry Howard. (Ex. 2, D. Gilley Aff., at ¶ 10).

12.      Mr. Howard was Plaintiff's subordinate. (Ex. 3, Ptff. Dep., at 189:21–190:3).

13.     On or about November 14, 2016, Mr. Howard's employment with Platt College was terminated for unsatisfactory job performance, including failure to meet retention goals within the Culinary Arts program. (Ex. 2, D. Gilley Aff., at ¶ 11).

14.     Each Platt College campus also has an admissions department, which is principally responsible for recruiting and admitting students. (Ex. 2, D. Gilley Aff., at ¶ 12); *see also* (Ex. 3, Ptff. Dep., at 34:5–14).

15.     The Director of Admissions is the head of the admissions department at a specific campus. (Ex. 2, D. Gilley Aff., at ¶ ); *see also* (Ex. 3, Ptff. Dep., at 66:15–19).

16.     At the times relevant to this lawsuit, the Director of Admissions at Platt College – North was Michael Johnson. Mr. Johnson's employment with Platt College was terminated on March 27, 2017, for unsatisfactory performance, including failure to meet his benchmarks for student starts (i.e., student enrollments). (Ex. 2, D. Gilley Aff., at ¶ 14); *see also* (Ex. 3, Ptff. Dep., at 68:4–5).

17.     Each campus Director of Admissions reports to a Regional Director of Admissions, who is responsible to admissions at campuses in his or her region. (Ex. 2, D. Gilley Aff., at ¶ 15).

18.     At the times relevant to this litigation, the Regional Director of Admissions who oversaw Platt College – North was Rebecca Burleigh. (Ex. 2, D. Gilley Aff., at ¶ 16); *see also* (Ex. 3, Ptff. Dep., at 67:22–25).

19.     Thus, the Executive Director, the Director of Education, the Director of Admissions, the Regional Director of Admissions, and the Program Director each have different responsibilities, objectives, goals, benchmarks, and supervisors. (Ex. 2, D. Gilley Aff., at ¶ 17); *see also* (Ex. 3, Ptff. Dep., at 34:5–22, 69:3–7, 69:21–70:5, 74:25–75:18).

4

**Plaintiff's Employment at Platt College**

20.     In April 2015, Plaintiff remotely interviewed with Platt College for the position of Director of Education at Platt College – North via telephone and videoconference. On or about April 24, 2015, Plaintiff interviewed with Kayla Danyeur, Executive Director of Platt College – North, via Skype videoconference. (Ex. 1, K. Danyeur Aff., at ¶ 7); (Ex. 3, Ptff. Dep., at 89:19–22, 91:16–92:6)

21.     Shortly thereafter, Ms. Danyeur, with authorization from Ancora Education's Chief Operating Officer, Dean Jenkins, made the decision to offer Plaintiff this position. (Ex. 1, K. Danyeur Aff., at ¶ 9); *see also* (Ex. 3, Ptff. Dep., at 91:16–92:6).

22.     Because Ms. Danyeur had interviewed Plaintiff via videoconference, at the time Ms. Danyeur decided to hire Plaintiff, Ms. Danyeur knew that Plaintiff was a black male. (Ex. 1, K. Danyeur Aff., at ¶ 8); *see also* (Ex. 3, Ptff. Dep., at 91:16–92:6).

23.     On or about May 12, 2015, Platt College extended an offer of employment to Plaintiff for the position of Director of Education at Platt College – North. (Ex. 1, K. Danyeur Aff., at ¶ 10); *see also* (Ex. 2, D. Gilley Aff., at ¶ 18).

24.     On or about May 20, 2015, Plaintiff began his employment as Director of Education at Platt College's Oklahoma City – North campus. (Ex. 1, K. Danyeur Aff., at ¶ 11); (Ex. 2, D. Gilley Aff., at ¶ 18); (Ex. 3, Ptff. Dep., at 103:11–13).

25.     In October 2015, Plaintiff received a raise in compensation from $62,500 in annual salary to $65,000 in annual salary. (Ex. 2, D. Gilley Aff., at ¶ 19).

**Plaintiff's Initial Workplace Issues**

26.     Starting in January 2016, Plaintiff began to regularly receive counseling regarding his interactions with instructors and staff. (Ex. 1, K. Danyeur Aff., at ¶ 12).

27.     For example, on or about January 16, 2016, Ms. Danyeur counseled Plaintiff regarding negative, demeaning, and unprofessional communications with a female instructor, Julie Roberts. Specifically, in response to Ms. Robert's concerns about her lack of scheduled hours during a holiday break, Plaintiff asked Ms. Roberts, "Why don't you have your boyfriend pay your bills?" (Ex. 1, K. Danyeur Aff., at ¶ 13).

28.     During Plaintiff's employment, Ms. Danyeur also counselled Plaintiff regarding his inappropriate communications with Cindi Caldwell, an administrative assistant, and Judy Wilburn, a Platt College instructor. (Ex. 1, K. Danyeur Aff., at ¶ 14).

29.     In July 2016, Ms. Danyeur also counseled Plaintiff regarding his decision to interrupt a class being instructed by Dana Luther in order to pull Ms. Luther out of class and to reprimand her. (Ex. 1, K. Danyeur Aff., at ¶ 20).

**Plaintiff's Behavior Improvement Plan**

30.     On March 22, 2016, Platt College – North Executive Director, Kayla Danyeur, and Mark Ferguson, Vice President of Operations for Platt College, met with Plaintiff to issue him a Behavior Improvement Plan regarding certain complaints and issues related to Plaintiff's employment as Platt College – North Director of Education. (Ex. 1, K. Danyeur Aff., at ¶¶ 15–17); (Ex. 4, M. Ferguson Decl., at ¶¶ 4–7).

31.     As set out in the March 22, 2016 Behavior Improvement Plan, Platt College asked Plaintiff to address and correct his issues meeting the standards of effective and professional communications at Platt College. (Ex. 1, K. Danyeur Aff., at ¶ 17); (Ex. 4, M. Ferguson Decl., at ¶ 7).

32.     Incidents addressed with Plaintiff and discussed in the March 22, 2016 Behavior Improvement Plan included the following:

6

a.  A female former student complained that Plaintiff had asked the former student to come to his apartment to teach him how to cook salmon.

b.  A female student complained about Plaintiff calling her into his office to have closed-door conversations unrelated to the student's education. The female student felt that Plaintiff was asking questions about her schedule to determine when she would be available outside of school.

c.  Another female student complained that Plaintiff had asked inappropriate questions about her friend who that student had brought to a Platt College event. On multiple occasions, Plaintiff asked the student about her friend and about what types of men her friend was interested in.

*Id.*

33.  During the March 22, 2016 counseling meeting, Plaintiff did not deny that any of the above incidents had occurred. But, Plaintiff refused to sign the Behavior Improvement Plan. (Ex. 1, K. Danyeur Aff., at ¶¶ 18–19); (Ex. 4, M. Ferguson Decl., at ¶ 8).

**Plaintiff's Issues with Student Retention**

34.  As Director of Education at Platt College – North, Plaintiff was primarily responsible for student retention at Platt College – North. (Ex. 2, D. Gilley Aff., at ¶ 9).

35.  Beginning in January 2016, the Platt College – North campus consistently failed to meet Ancora Education's benchmark of 5.0% for gross drop percentage. (Ex. 1, K. Danyeur Aff., at ¶ 22); *see also* (Ex. 3, Ptff. Dep., at 143:5–144:5, 145:5–9).

36.  From January 2016, to August 2016, under Plaintiff's responsibility and supervision, Platt College – North experienced the following campus-wide drop rates by enrolled students:

      a.        January 2016: **6.3%**

      b.        February 2016: 4.7%

      c.        March 2016: **6.6%**

      d.        April 2016: **6.0%**

      e.        May 2016: **5.3%**

      f.        June 2016: **6.1%**

      g.        July 2016: **9.0%**

      h.        August: **10.4%**

(Ex. 1, K. Danyeur Aff., at ¶ 22).

37.    Therefore, through August 2016, the student drop rate at Platt College – North increased to more than double the Ancora Education benchmark. *See* (Ex. 1, K. Danyeur Aff., at ¶ 22).

**Plaintiff's Mishandling of Instructor Absence**

38.    On or about September 20, 2016, multiple students informed Ms. Danyeur that they were concerned about their final grade in MATH 1514, a course taught by Melody Morgan, because Ms. Morgan had been absent a substantial number of days during the course module. (Ex. 1, K. Danyeur Aff., at ¶ 23).

39.    Ms. Danyeur raised these concerns with Plaintiff, who initially denied any knowledge of Ms. Morgan's absence. (Ex. 1, K. Danyeur Aff., at ¶ 24).

40.    Thereafter, Ms. Danyeur investigated these concerns and discovered that Plaintiff had entered attendance on behalf of Ms. Morgan when Ms. Morgan was absent from class on at least seven days of instruction in August and September 2016. (Ex. 1, K. Danyeur Aff., at ¶ 25).

41.     Specifically, Plaintiff entered attendance for Ms. Morgan when she was absent from class on the following days: August 29, 2016, through September 1, 2016; September 15, 2016; and September 19, 2016, through September 20, 2016. (Ex. 1, K. Danyeur Aff., at ¶ 25); (Ex. 3, Ptff. Dep., at 162:18–163:10).

42.     From this, Ms. Danyeur determined that Plaintiff had been dishonest about his knowledge of Ms. Morgan's absence. (Ex. 1, K. Danyeur Aff., at ¶ 26).

43.     In fact, on each of the seven days that Ms. Morgan was absent, no substitute instructor was present to lead her course. Instead, Plaintiff handed out work, took attendance, and left the class unsupervised. (Ex. 1, K. Danyeur Aff., at ¶ 27), (Ex. 3, Ptff. Dep., at 161:1–5).

44.     As Director of Education, Plaintiff was responsible for obtaining qualified substitutes to teach the courses offered at Platt College, including the course taught by Ms. Morgan. (Ex. 1, K. Danyeur Aff., at ¶ 28).

45.     By missing seven days of instruction, Ms. Morgan missed a significant portion of the course without a substitute instructor to cover her absence. *See* (Ex. 3, Ptff. Dep., at 164:13–165:7).

46.     Around this same time, Ms. Danyeur learned that, in order to accommodate Ms. Morgan's schedule with another employer, Plaintiff had instructed Ms. Morgan to dismiss another class, MATH 1004, 30 minutes early on Tuesdays and Thursdays to allow Ms. Morgan to travel to her other job. To make up for these shorter classes, Plaintiff instructed Ms. Morgan to extend the duration of classes on Mondays and Wednesdays, but to mark students present for the full class, even if they could not or did not attend the complete extended class period. To further accommodate Ms. Morgan's schedule with

another employer, Plaintiff instructed Ms. Morgan to start MATH 1004 one-hour late on Fridays without any make-up time. (Ex. 1, K. Danyeur Aff., at ¶¶ 30–31); (Ex. 4, M. Ferguson Decl., at ¶ 10); *see also* (Ex. 3, Ptff. Dep., at 185:1–8).

47.     Plaintiff did not have approval from his Executive Director (i.e., Ms. Danyeur) or any other Platt College employee to alter course schedules in this manner. (Ex. 1, K. Danyeur Aff., at ¶ 33).

48.     By inadequately covering Ms. Morgan's absence and improperly rescheduling a course, Plaintiff risked compliance issues with Platt College's ACCSC instruction-hours requirements. (Ex. 1, K. Danyeur Aff., at ¶¶ 29, 32); (Ex. 4, M. Ferguson Decl., at ¶ 11); *see also* (Ex. 3, Ptff. Dep., at 168:19–169:13, 173:8–11).

**Plaintiff's Termination**

49.     Upon discovering Plaintiff's actions regarding Ms. Morgan's courses and his failure to disclose his actions to his supervisors, Ms. Danyeur, Executive Director of Platt College – North, and Mark Ferguson, Vice President of Operations for Platt College, made the decision to terminate Plaintiff's employment. (Ex. 1, K. Danyeur Aff., at ¶ 34); (Ex. 4, M. Ferguson Decl., at ¶ 13).

50.     Ms. Danyeur and Mr. Ferguson's decision was approved by Dean Jenkins, COO of Ancora Education. (Ex. 1, K. Danyeur Aff., at ¶ 34); (Ex. 4, M. Ferguson Decl., at ¶ 13).

51.     On or about September 30, 2018, Ms. Danyeur and Mr. Ferguson met with Plaintiff to inform him that Platt College was terminating his employment. At that meeting, Ms. Danyeur and Mr. Ferguson specifically informed Plaintiff that his actions regarding Ms. Morgan's courses, along with his unsatisfactory retention numbers, were the primary

reasons for his termination. (Ex. 1, K. Danyeur Aff., at ¶ 36); (Ex. 4, M. Ferguson Decl., at ¶ 15); *see also* (Ex. 3, Ptff. Dep., at 180:9–20).

52.     Following Plaintiff's termination, Platt College hired Saundra Geary as Director of Education at Platt College – North. Ms. Geary met all the requirements for the position as prescribed by the ACCSC. In fact, the EEOC independently determined that Ms. Geary was qualified for her position. (Ex. 2, D. Gilley Aff., at ¶ 21).

53.     During his employment, Plaintiff's supervisor, Ms. Danyeur, never used a racial slur or expressed any preference for whites or females. (Ex. 3, Ptff. Dep., at 191:16–25).

54.     During his employment, Plaintiff never complained of unfair treatment on the basis of race or sex. (Ex. 3, Ptff. Dep., at 192:18–23).

**Plaintiff's Unemployment Claim and EEOC Charge**

55.     Platt College uses a third-party administrator, ADP, for its state unemployment proceedings. (Ex. 2, D. Gilley Aff., at ¶ 22).

56.     Mary Scott, an ADP Unemployment Claims Specialist, handled the entirety of Plaintiff's unemployment proceedings, including the provision of all employer information to the Oklahoma Employment Security Commission. (Ex. 2, D. Gilley Aff., at ¶ 23).

57.     To the extent Platt College provided information to ADP regarding Plaintiff's unemployment claim, Platt College provided all information through ADP's online portal. This portal included a dropdown menu with limited selections for the explanation for Plaintiff's termination. (Ex. 2, D. Gilley Aff., at ¶ 24).

58.     In its EEOC Position Statement, Platt College merely restated the reasons for Plaintiff's termination that Kayla Danyeur and Mark Ferguson explained to Plaintiff, including Plaintiff's mishandling of Ms. Morgan's absences, Plaintiff's dishonesty regarding his mishandling of Ms. Morgan's absences, and Plaintiff's improper alterations to Ms. Morgan's course schedule. (Ex. 2, D. Gilley Aff., at ¶ 25).

## ARGUMENT & AUTHORITIES

### I.     Standard of Review

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense … on which summary judgment is sought." The Court should grant such a motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* "A fact is 'material' if under the substantive law it could have an effect on the outcome of the lawsuit." *Adams v. Am. Guarantee & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000). "An issue is 'genuine' if a rational juror could find in favor of the nonmoving party on the evidence presented." *Id.*

The movant initially bears the burden of "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has met this burden, the non-movant "may not rest upon the mere allegations or denials of the adverse party's pleading," but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Any affidavits offered by a nonmovant "must be based upon personal knowledge and set forth facts that would be admissible in evidence;

conclusory and self-serving affidavits are not sufficient." *Sherman v. Klenke*, 653 Fed. Appx. 580, 585–86 (10th Cir. 2016). "Affidavits or other evidence offered by a nonmovant must create a genuine issue for trial; viewing the evidence in the light most favorable to the nonmovant, it is not enough that the evidence be 'merely colorable' or anything short of 'significantly probative.'" *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991).

In this case, the undisputed material facts show that Platt College terminated Plaintiff's employment for legitimate, non-discriminatory reasons. The principal reasons for Plaintiff's termination were his mishandling of an instructor's absences and scheduling issues, his dishonesty and failure to inform his supervisors regarding those absences and scheduling issues, and the unacceptable student drop rate at Platt College – North during 2016. Plaintiff was also counseled on multiple occasions for inappropriate communications with instructors, students, and staff. Plaintiff cannot genuinely dispute these facts, nor can he establish that he was discriminated against because of his sex or race. Therefore, the Court should enter summary judgment against Plaintiff and in favor of Platt College on all of Plaintiff's claims.

## II.   Platt College Is Entitled to A Same Actor Inference.

As an initial matter, the Court should review this case in light of a same-actor inference. "[I]n cases where the employee was hired and fired by the same person within a relatively short time span, there is a strong inference that the employer's stated reason for acting against the employee is not pretextual." *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1183 (10th Cir. 2006) (quotation omitted). This inference applies in cases where "[m]ost of the same individuals … who decided to terminate [a plaintiff] … had also hired [that plaintiff]." *Id.* The Tenth Circuit applies this inference, because "it would make little

13

sense for an employer to hire an employee with full awareness of his race only to fire him

a short time later because of it." *Johnson v. Oklahoma Dep't of Transp.*, 645 Fed. Appx.

765, 767 (10th Cir. 2016) "The same actor inference has been applied when the hiring and

firing occurred up to four years apart." *Braun v. St. Pius X Par.*, 827 F. Supp. 2d 1312,

1322 (N.D. Okla. 2011); *see also Robinson v. St. John Med. Ctr., Inc.*, 645 Fed. Appx. 644,

653 (10th Cir. 2016) (applying the same-actor inference to an employee who had been

hired and fired in a 27-month period).

    In this case, Kayla Danyeur, Executive Director of Platt College – North, with

approval from Dean Jenkins, COO of Ancora Education, made the decision to hire

Plaintiff. (SUMF, at ¶¶ 21–22). Ms. Danyeur made this decision with full knowledge of

Plaintiff's race and sex. *Id.* Approximately 19 months later, Ms. Danyeur and Mark

Ferguson, Vice President of Operations for Platt College, again with approval from Mr.

Jenkins, made the decision to terminate Plaintiff's employment. (SUMF, at ¶¶ 49–50).

Therefore, Platt College is entitled to the inference that its decision to terminate Plaintiff

was not pretextual, and the Court should consider this Motion for Summary Judgment in

light of that inference.

## III.   The Court Should Enter Summary Judgment in Favor of Platt College on Plaintiff's Race-Discrimination Claim.

    In the first count of his Complaint, Plaintiff alleges that Platt College terminated his

employment because of his race. (Compl. [Doc. 1], at ¶ 1, 36–39). Yet, the undisputed

material facts show that Platt College terminated Plaintiff's employment for legitimate,

non-discriminatory reasons and that Plaintiff cannot establish a race-discrimination claim

under Title VII of the Civil Rights Act. As explained in more detail below, no reasonable

jury could find in favor of Plaintiff, and the Court should enter summary judgment in favor of Platt College on Plaintiff's race-discrimination claim.

"Under the three-part *McDonnell Douglas* framework, the burden of production shifts from the plaintiff to the defendant and back to the plaintiff. … But *the plaintiff* bears the ultimate burden of persuasion to show discrimination." *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 969 (10th Cir. 2017) (emphasis added) (citations omitted).

In the first step of the *McDonnell Douglass* framework, "the plaintiff must establish a *prima facie* case of discrimination by a preponderance of the evidence." *Id.* In general, "a plaintiff may establish a *prima facie* case of wrongful termination by showing that: (1) [he] belongs to a protected class; (2) [he] was qualified for [his] job; (3) despite [his] qualifications, [he] was discharged; and (4) the job was not eliminated after [his] discharge." *Id.* (quotation omitted). If a plaintiff makes this showing, the burden on production shifts to the defendant. *Id.*

In the next step of the *McDonnell Douglass* framework, "the defendant must articulate a legitimate, nondiscriminatory reason for the adverse employment action suffered by the plaintiff." *Id.* "The defendant's burden is *exceedingly light*, as its stated reasons need only be legitimate and non-discriminatory *on their face*." *Id.* (emphasis added) (citations and quotations omitted). "The defendant must provide admissible evidence of a legally sufficient explanation for the employment action that raises a genuine issue of material fact as to whether the defendant discriminated against the plaintiff." *Id.* (emphasis added) (citations and quotations omitted). "But the defendant's burden is *one of production, not persuasion*; it can involve *no credibility assessment*." *Id.* (emphasis added) (citations and quotations omitted).

In the final step of the *McDonnell Douglass* framework "the burden shifts back to the plaintiff to demonstrate that the employer's justification is pretextual—not the true reason for the employment decision—by a preponderance of the evidence. " *Id.* (quotation omitted). "A plaintiff can meet this burden to show pretext in either of two ways: (1) by showing that the proffered reason is factually false or (2) by showing that discrimination was a primary factor in the employer's decision, which is often accomplished by revealing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered reason, such that a reasonable fact finder could deem the employer's reason unworthy of credence." *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1218 (10th Cir. 2013) (quotation omitted).

That said, "[m]ere conjecture that the employer's explanation is a pretext for intentional discrimination is an *insufficient basis* for denial of summary judgment." *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1307 (10th Cir. 2017) (emphasis added) (quotation omitted). And, the Court's "role is to prevent intentional discriminatory practices, not to act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments." *Dewitt*, 845 F.3d at 1308. "[T]he relevant inquiry is whether the employer honestly believed those reasons and acted in good faith upon those beliefs." *DePaula*, 859 F.3d at 971 (quotation omitted).

With respect to Plaintiff's race-discrimination claim, Platt College terminated Plaintiff's employment for the legitimate, non-discriminatory reasons of his mishandling of instructor absences and course scheduling, his dishonesty and failure to report those absences and scheduling issues, and the unsatisfactory attrition rate at Platt College – North in 2016. No reasonable jury could find that these reasons are pretext for

16

discrimination. Therefore, the Court should enter summary judgment in favor of Platt College on Plaintiff's race-discrimination claim.

### A. Platt College Can Easily Satisfy the Second Step of McDonnel Douglass, Because Platt College Terminated Plaintiff's Employment for Legitimate, Non-discriminatory Reasons.

For the purposes of this Motion for Summary Judgment only, Platt College does not contest that, for his race-discrimination claim, Plaintiff can establish a *prima facie* case under the *McDonnell Douglass* framework. But, from the undisputed material facts, it is also clear that Platt College terminated Plaintiff's employment as Director of Education, Platt College – North for legitimate, non-discriminatory reasons. And, Platt College can easily meet its burden under the second step of the *McDonnell Douglass* framework.

As Ms. Danyeur and Mr. Ferguson explained to Plaintiff, Platt College terminated Plaintiff's employment for the legitimate, non-discriminatory reasons of Plaintiff's mishandling of an instructor absences, dishonesty and failure to report that absence, improper manipulation of a course schedule, and failure to meet student-retention benchmarks. (SUMF, at ¶¶ 34–51). Platt College had also repeatedly counseled Plaintiff regarding his interactions with co-workers and female students. (SUMF, at ¶¶ 30–33).

In this case, Platt College has explained that one reason for Plaintiff's termination was Plaintiff's inadequate coverage of an instructor absence and his improper concealment of that absence. (SUMF, at ¶¶ 34–51). Similarly, another reason for Plaintiff's termination was Plaintiff's unauthorized and inappropriate rescheduling of a course to fit an instructor's schedule with another employer. *Id.* These actions could have resulted in adverse consequences with Platt College's accrediting agency. (SUMF, at ¶ 48). The Tenth Circuit

17

has held that dishonesty is a legitimate, non-discriminatory reason for an adverse employment action. *See, e.g.*, *Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1194 (10th Cir. 2016) (holding that "lying … would suffice as a legitimate, non-discriminatory basis for termination"); *Piercy v. Maketa*, 480 F.3d 1192, 1200 (10th Cir. 2007) (holding that "departure from the truth" was "adequate grounds for firing"). Courts have also held that failure to follow applicable regulations or protocols is a legitimate, non-discriminatory reason for termination. *Goins v. Bridgeport Hosp.*, 555 Fed. Appx. 70, 73 (2d Cir. 2014) (holding that a "failure to follow hospital protocol" was a legitimate, non-discriminatory reason for termination).

Platt College has also explained that Plaintiff's failure to meet his student-retention benchmarks also factored into the decision to terminate Plaintiff's employment. (SUMF, at ¶¶ 34–37, 49–51). And, the Tenth Circuit and other courts have held that failure to meet performance goals is a legitimate, non-discriminatory reason for an adverse employment action. *Garcia v. DS Waters of Am., Inc.*, 372 Fed. Appx. 925, 927 (11th Cir. 2010) (holding that "low sales figures" were a legitimate, nondiscriminatory reason for termination); *Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006) (holding that a "failure to meet one or more performance goals" was a "legitimate, nondiscriminatory reason for [a] termination").

Further, though not the immediate cause of Plaintiff's termination, the Tenth Circuit and other courts have held that inappropriate interactions with female co-workers were legitimate, non-discriminatory reasons to terminate employment. *See, e.g.*, *Zamora v. Bd. of Educ. for Las Cruces Pub. Sch.*, 553 Fed. Appx. 786, 790 (10th Cir. 2014) (holding that violation of "policies regarding sexual harassment" was a legitimate, non-discriminatory

18

reason for termination); *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006) (holding that "sexual harassment" allegedly committed by the plaintiff "constitute[d] [a] legitimate, nondiscriminatory reason[] for [the plaintiff's] termination").

From the above, Platt College can easily satisfy its burden of production under the second step of the *McDonnell Douglass* framework. Therefore, Plaintiff will have the ultimate burden of establishing that Platt College's explanation for Plaintiff's termination is pretext for discrimination. However, as explained further below, Plaintiff cannot do so, and the Court should enter summary judgment in favor of Platt College.

###### B.    As a Matter of Law, Plaintiff Cannot Establish Pretext.

At most, in his Complaint and in his Responses to Platt College's First Set of Discovery requests, Plaintiff offers five arguments in support of his contention that Platt College's explanation for his termination is pretext for termination. But as explained in more detail below, each of these arguments are insufficient to establish pretext as a matter of law, and the Court should enter summary judgment in favor of Platt College.

###### i.    As a matter of law, Plaintiff cannot point to any comparators who were treated more favorably by Platt College.

In his Complaint and in his Discovery Responses, Plaintiff alleges that Michael Johnson, Director of Admissions (a white male); Rebecca Burleigh (a white female); and Jeffry Howard (a white male) received more favorable treatment. (Compl. [Doc. 1], at ¶¶ 23–26); (Ex. 5, Disc. Resps., at 4–7). Specifically, Plaintiff alleges that none of these three employees were terminated as a result of the unsatisfactory student-retention numbers at Platt College – North in 2016. *Id.* This contention is insufficient to show pretext as a matter of law.

"[A] plaintiff may … show pretext on a theory of disparate treatment by providing evidence that he was treated differently from other *similarly-situated*, nonprotected employees who *violated work rules of comparable seriousness*." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1232 (10th Cir. 2000) (emphasis added). "A similarly situated employee is one who deals with the same supervisor and is subject to the same standards governing performance evaluation and discipline." *Green v. New Mexico*, 420 F.3d 1189, 1194 (10th Cir. 2005) (quotation omitted). "In determining whether two employees are similarly situated, a court should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees." *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006) "Moreover, even employees who are similarly situated must have been disciplined for conduct of comparable seriousness in order for their disparate treatment to be relevant." *Id.* (quotation omitted).

In this case, none of the Platt College employees that Plaintiff has identified are proper comparators. All three had different job titles, responsibilities, and supervisors. (SUMF, at ¶¶ 8–19). Rebecca Burleigh, the Regional Director of Admissions, was responsible for overseeing the admissions teams at multiple Platt College campuses, and she reported to the executive management of Ancora Education. (SUMF, at ¶¶ 17–18). She was <u>not</u> responsible for the retention of admitted students at Platt College – North. *See id.*

Michael Johnson, Director of Admissions at Platt College – North, was responsible for overseeing the admissions team at Platt College – North. (SUMF, at ¶¶ 14–16). He was responsible for student admissions (i.e., matriculation), rather than retention of admitted and enrolled students. *See id.* Further, Mr. Johnson's employment was ultimately

terminated for, among other things, his failure to meet his own *admissions* benchmarks. (SUMF, at ¶ ). *Id.*

Jeffry Howard, Culinary Arts Program Director at Platt College – North and Platt College – Tulsa, was responsible for overseeing the Culinary Arts program at Platt College – North and Platt College – Tulsa. (SUMF, at ¶¶ 11–13). While Mr. Howard may have had some responsibility for retention, it was only within the Culinary Arts program and divided among two campuses. More importantly, shortly after Plaintiff's employment was terminated, Mr. Howard's employment was also terminated for his retention issues within his program. *Id.* In other words, even though they were not similarly situated, Plaintiff and Mr. Howard received the same treatment.

Further, Plaintiff does not even allege, let alone produce evidence, that any of these three employees engaged in "conduct of comparable seriousness," such as mishandling an instructor absence, concealing an instructor absence, or inappropriate and improper interactions with co-workers, students, and former students. *See generally* (Compl. [Doc. 1]). Therefore, none of Ms. Burleigh, Mr. Johnson, or Mr. Howard are "comparators" to Plaintiff. As a matter of law, a difference in treatment between these individuals cannot establish pretext.

### ii.      Platt College followed its disciplinary policies.

Next, Plaintiff alleges that, in terminating his employment, Platt College "failed to follow its progressive discipline policy … ." (Compl. [Doc. 1], at ¶¶ 37, 41). In support of this allegation, Plaintiff offers nothing more than legally insufficient "mere conjecture." *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1307 (10th Cir. 2017). Nevertheless, the

evidence supports that Platt College did in fact follow its policies when it terminated Plaintiff's employment.

First, the undisputed material facts show that, during his employment, Plaintiff was repeatedly verbally counselled and given at least one written warning (i.e., the March 22, 2016 Behavior Improvement Plan). (SUMF, at ¶¶ 30–33). Second, the Employee Handbook was unequivocal that "[c]ertain infractions, unacceptable performance, or behavior may warrant immediate termination without prior disciplinary action." (SUMF, at ¶ 7). Therefore, no reasonable jury could find that Platt College failed to follow its policy when terminating Plaintiff employment. As a matter of law, Plaintiff cannot establish pretext through the (incorrect) conjecture that Platt College failed to follow its policies.

### iii.   Platt College has been consistent in its explanation for Plaintiff's termination.

Plaintiff also alleges that "Platt College has offered different reasons for Plaintiff's termination." (Compl. [Doc. 1], at ¶ 32). Specifically, Plaintiff alleges that "[d]uring his termination meeting, [Ms.] Danyeur told Plaintiff [that] he was being terminated due to attrition numbers"; that Platt College "informed the Oklahoma Employment Security Commission that Plaintiff was terminated for unsatisfactory job performance without misconduct"; and that "[i]n its Position Statement to the EEOC, [Platt College] stated that Plaintiff was terminated for misconduct and integrity violations." *Id.* at ¶ 33.

"Although *inconsistent* rationales may constitute pretext, the *mere variety* of reasons for a termination decision do not alone create pretext." *Ruleford v. Tulsa World Pub. Co.*, 266 Fed. Appx. 778, 782 (10th Cir. 2008) (emphasis added). As a matter of law, pretextual inconsistencies are "not only shifting but also conflicting, and at times retracted,

justifications for adverse treatment." *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 733 (7th Cir. 2001). When "the various reasons are not only different but *mutually inconsistent*, the contradictions are sufficient to establish pretext for the purpose of summary judgment." *Clayton v. Vanguard Car Rental U.S.A., Inc.*, 761 F. Supp. 2d 1210, 1248 (D.N.M. 2010) (emphasis added). "Once an employer has provided a non-discriminatory explanation for its decision, the plaintiff *cannot* seek to expose that rationale as pretextual by focusing on minor discrepancies that do not cast doubt on the explanation's validity, or by raising points that are wholly irrelevant to it. The former would not create a 'genuine' dispute, the latter would fail to be 'material.'" *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 216 (4th Cir. 2007) (emphasis added). In sum "there is no support for a finding of pretext if the employer does not give inconsistent reasons, but instead merely elaborates on the initial justification for termination." *Matthews v. Euronet Worldwide, Inc.*, 271 Fed. Appx. 770, 774 (10th Cir. 2008).

In this case, the undisputed material facts show that Ms. Danyeur and Mr. Ferguson, with approval from Mr. Jenkins, decided to terminate Plaintiff's employment because of his failure to adequately cover and report an instructor absence, his improper rearrangement of a course schedule, and Platt College – North's student-attrition rate. (SUMF, at ¶¶ 49–50). Thereafter, Ms. Danyeur and Mr. Ferguson met with Plaintiff to inform him that his employment was being terminated for these reasons. (SUMF, at ¶ 51). This reflects Platt College's EEOC Position Statement, which provided that Plaintiff was terminated for these reasons. (SUMF, at ¶ 58). But, even if Ms. Danyeur had only mentioned Plaintiff's attrition numbers during his termination, this is in no way inconsistent with the other reasons for Plaintiff's termination.

As for Plaintiff's unemployment proceedings, Platt College relies on a third-party administrator, ADP, to manage its unemployment actions. (SUMF, at ¶ 55). Mary Scott, an ADP Unemployment Claims Specialist, provided all information to the Oklahoma Employment Security Commission regarding Plaintiff's employment with Platt College. (SUMF, at ¶ 56). To the extent Platt College provided any information regarding Plaintiff's unemployment proceedings, Platt College provided this information via canned responses in dropdown menus on ADP's web portal. (SUMF, at ¶ 57). Platt College merely selected the most applicable of ADP's limited available responses. *Id.* Moreover, Plaintiff's allegations only reflect Platt College's consistent position that Plaintiff did not perform his job satisfactorily, both with respect to his oversight of instructors and with respect to student retention.

### iv.    Plaintiff's successor does not show pretext.

In his Complaint, Plaintiff also alleges that the fact that his successor in the Director of Education position was a white female with less experience is evidence of pretext. (Compl. [Doc. 1], at ¶¶ 30–31). But, as a matter of law, this allegation is insufficient to show pretext. The Tenth Circuit has explained that the courts "must proceed with caution when considering the relative merits of individual employees." *Jaramillo v. Colorado Judicial Dep't*, 427 F.3d 1303, 1308 (10th Cir. 2005).  The Court should not act as "a super personnel department that second guesses employers' business judgments." *Matthews v. Euronet Worldwide, Inc.*, 271 Fed. Appx. 770, 776 (10th Cir. 2008). "Accordingly, minor differences in the qualifications of two individuals do not show pretext; rather, the disparity must be 'overwhelming.'" *Id.*

In this case, Plaintiff's successor, Saundra Geary, met all ACCSC requirements for the position of Director of Education. (SUMF, at ¶ 52). And, the EEOC independently determined that Ms. Geary was qualified for her position. *Id.* A mere difference in experience level does not show pretext. *See, e.g.*, *Matthews*, 271 Fed. Appx. at 776 (holding that an experience discrepancy of nine years and one-and-a-half years was insufficient to show pretext). Therefore, no reasonable jury could find that Platt College's hiring of Ms. Geary as Director of Education is evidence of pretext.

### v. Plaintiff's Other Allegations Concerning His Supervisor Are Insufficient to Establish Pretext.

Finally, though not alleged in his Complaint or identified in his Discovery Responses, in his deposition, Plaintiff alleged that certain actions by Kayla Danyeur demonstrated discriminatory intent. Specifically, Plaintiff alleged that, after interviewing a Nigerian job applicant, Ms. Danyeur remarked, "Can you believe that accent?" (Ex. 3, Ptff. Dep., at 212:24–213:4). In his deposition, Plaintiff also claimed that, at some point in time, a black female student was written up for drinking before class, while white male student was not for similar conduct. (Ex. 3, Ptff. Dep., at 190:21–191:1).

As for Plaintiff's allegation about the Nigerian applicant, this comment is not discriminatory on its face and clearly relates to national origin, not race. More importantly, "[i]solated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in termination decisions." *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir.1994). "To establish pretext from such comments, [a plaintiff] must tie the statements to [his] termination." *Salazar v. City of Commerce City*, 535 Fed. Appx. 692, 697 (10th Cir. 2013). "That is, [he] must show that the comments were directed

at [him] or [his] position, or that there is a connection between the comments and [his] termination." *Id.* As a matter of law, this alleged comment (or any similar comments) cannot show pretext. This is especially the case where Platt College is entitled to a same-actor inference from *Ms. Danyeur's* decision to hire Plaintiff in the first place. Plaintiff has also acknowledged that Ms. Danyeur never used a racial slur or racially charged language and that he never complained about disparate treatment at Platt College based on race. (SUMF, at ¶¶ 53–54).

Regarding the alleged differing treatment of the two students who drank before class, Plaintiff has deliberately and conveniently omitted the fact that the white male student was not written up at Plaintiff's own urging. *See* (Ex. 2, D. Gilley Aff, at ¶ 52). Even so, "merely finding that people have been treated differently stops short of the crucial question: *why* people have been treated differently." *Howard v. Oklahoma Dep't of Corr.*, 247 F. Supp. 3d 1210, 1226 (W.D. Okla. 2017) (emphasis original) (quotation omitted). Plaintiff has offered no evidence supporting that this difference in treatment (or any other alleged difference in treatment between any Platt College employees or students) was due to racial bias, rather than the differing circumstances of the two incidents. Therefore, as a matter of law, no reasonable jury could find pretext for discrimination based on these allegations.

In sum, Platt College can easily establish that it terminated Plaintiff's employment because of Plaintiff's mishandling of and failure to report an instructor absence, Plaintiff's improper rearrangement of a course schedule, and Platt College – North's student-attrition rate. In contrast, as a matter of law, no reasonable jury could find that Plaintiff's allegations establish pretext. This is especially so, given that Platt College is entitled to a same-actor

inference that Platt College did not discriminate against Plaintiff because of his race. Therefore, the Court should enter summary judgment in favor of Platt College on Plaintiff's race-discrimination claim.

## IV.     The Court Should Enter Summary Judgment in Favor of Platt College on Plaintiff's Sex-Discrimination Claim.

In addition to his race-discrimination claim, Plaintiff has also alleged a sex-discrimination claim. (Compl. [Doc. 1], at ¶¶ 40–43). In other words, Plaintiff has alleged a "reverse discrimination" claim. For the same reasons as his alleged race-discrimination claim, no reasonable jury could ever find pretext for discrimination. Nevertheless, because a claim of "reverse discrimination" requires a stronger showing, Plaintiff cannot even establish a *prima facie* case of reverse discrimination. For these reasons, the Court should enter summary judgment in favor of Platt College on Plaintiff's sex-discrimination claim.

### A.     Plaintiff Cannot Establish a *Prima Facie* Case, Because Platt College Is Not "One of Those Unusual Employers" who Discriminates Against Males.

A reverse-discrimination claim follows a modified versions of the *McDonnell Douglass* framework applied to a typical Title VII claim. *See Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1201 (10th Cir. 2006). To show establish a *prima facie* case of reverse sex-discrimination, a plaintiff "must, in lieu of showing that he belongs to a protected group, establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority." *Id.* (quotation omitted). "Alternatively, a plaintiff may produce facts sufficient to support a reasonable inference that but for plaintiff's status the challenged decision would not have occurred." *Id.* (quotation omitted).

27

Plaintiff has not produced (and cannot produce) any facts that "establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority," nor has Plaintiff produced "facts sufficient to support a reasonable inference that but for plaintiff's status the challenged decision would not have occurred." For example, Plaintiff alleges that two *males* and one female were treated more favorably with respect to student attrition. (Compl. [Doc. 1], at ¶¶ 23–26); (Ex. 5, Disc. Resps., at 4–7). As discussed above, as a matter of law, these individuals are not comparators to Plaintiff, because they had different positions, responsibilities, and supervisors and they did not cause the same workplace issues. But even if they were comparators, the identification of two males undermines Plaintiff's sex-discrimination claim, and the identification of one female employee who was allegedly treated better, without more, is not enough to meet the heightened *prima facie* case of sex-discrimination. *See, e.g.*, *Clark v. Cache Valley Elec. Co.*, 573 Fed. Appx. 693, 697 (10th Cir. 2014) (holding that "evidence [of] preferential treatment to *one* female employee" was not enough to support a *prima facie* case of reverse discrimination). The same is true regarding the fact that Plaintiff's successor was a white female.

While Plaintiff's other allegations are insufficient to establish pretext, none of these allegations can be characterized as evidence of sex discrimination. Plaintiff offers no facts to support that an alleged failure to follow disciplinary policy or discrepancy in explanation for termination were because of his sex. Plaintiff's allegations regarding Kayla Danyeur also do not support any reasonable inference of sex discrimination. This is especially true where Platt College is entitled to a same-actor inference, because of *Ms. Danyeur's* decision to hire Plaintiff, knowing that he was a male. In fact, Plaintiff completely

undermines his sex-discrimination claim by acknowledging that he never heard sexually discriminatory remarks from Ms. Danyeur of anyone else at Platt College. (SUMF, at ¶¶ 53–54).

Plaintiff cannot show that Platt College is that "unusual employer" who discriminates against males. Because of this, Plaintiff cannot establish a *prima facie* case of reverse discrimination. Therefore, the Court should enter summary judgment in favor of Platt College on Plaintiff's sex-discrimination claim.

      B.      **For the Same Reasons He Cannot Show Pretext for Race Discrimination, Plaintiff Cannot Show Pretext of Sex Discrimination.**

In the alternative, if the Court determines that Plaintiff can establish a *prima facie* case of sex discrimination, the Court should enter summary judgment in favor of Platt College, because no reasonable jury could find pretext. As discussed above, as a matter of law, none of Plaintiff's allegations are sufficient to establish pretext. For the same reasons that these allegations are insufficient to establish pretext in the race-discrimination context, they are also insufficient to establish pretext in the reverse-discrimination context. *See, e.g.*, *Smith v. Wynne*, 494 Fed. Appx. 867, 873 (10th Cir. 2012). In fact, Plaintiff's allegations—e.g., that two males received preferential treatment—are only weaker in the reverse-discrimination context. For this additional reason, the Court should grant summary judgment in favor of Platt College on Plaintiff's sex-discrimination claim.

## CONCLUSION

For the foregoing reasons, the Court should grant Platt College's Motion for Summary Judgment. Platt College is entitled to the same-actor inference that it did not discriminate against Plaintiff. Moreover, the undisputed material facts support that Platt

College terminated Plaintiff's employment for the legitimate, non-discriminatory reasons of Plaintiff's inadequate coverage of an instructor absence, his failure to report and dishonesty regarding these absences, his inappropriate rescheduling of a course, and the attrition rate at Platt College – North. The undisputed material facts also show that Plaintiff was counseled multiple times and placed on a Behavior Improvement Plan regarding his inappropriate and unprofessional interactions with co-workers and students. No reasonable jury could find that these explanations are pretext for discrimination. Respectfully, the Court should enter summary judgment in favor of Platt College on all of Plaintiff's claims.

Respectfully submitted,

s/Brandon D. Kemp
Victor F. Albert, OBA #12069
Brandon D. Kemp, OBA #31611
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
The Heritage Building
621 N. Robinson Ave., Ste. 400
Oklahoma City, OK  73102
Telephone:  (405) 546-3757
Email: victor.albert@ogletree.com
        brandon.kemp@ogletree.com

**ATTORNEYS FOR PLATT COLLEGE**

## **CERTIFICATE OF SERVICE**

I hereby certify that on this December 17, 2018, a true and correct copy of the foregoing was served by electronic mail and by U.S. Mail, postage prepaid, to the following:

Willie B. Bates
770 Millbrae Court, Unit 5
West Palm Beach, FL  33401
onceuponamarine@gmail.com

s/Brandon D. Kemp
Brandon D. Kemp

36733351.1