**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

WILLIE B. BATES,

Plaintiff,

vs.

STVT-AAI EDUCATION, INC., d/b/a PLATT COLLEGE,

Defendant.

NO. CIV-18-0065-HE

**ORDER**

Plaintiff Willie B. Bates ("Bates") filed this action against defendant STVT-AAI Education, Inc., d/b/a Platt College ("Platt College"), alleging race and sex discrimination in violation of Title VII, 42 U.S.C. § 2000e-2(a). Platt College has moved for summary judgment.

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Material facts are those which "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To determine whether this standard is met, the court views the evidence in the light most favorable to the non-moving party. Estate of Booker v. Gomez, 745 F.3d 405, 411 (10th Cir. 2014). "[T]he plain language of Rule 56(c) mandates entry of summary judgment . . . against a party who fails to make a showing sufficient to establish

the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

**Background**

Platt College is a private career college with Oklahoma campuses in Tulsa, Oklahoma City, Moore, and Lawton.[1] The Oklahoma City campus is called Platt College – North. Platt College is a part of the Ancora Education group of career colleges. Each Platt College campus is run by an Executive Director, who is the senior campus leader responsible for all campus operations. Each Executive Director reports to Ancora Education's executive management. Each Platt College campus also employs a Director of Education, who reports to the Executive Director. The Director of Education is responsible for education oversight, compliant operations, and quality delivery of services to students leading to successful outcomes. This responsibility includes retention of matriculated students at the campus. Each educational program at Platt College also has its own Program Director.

In April 2015, Bates remotely interviewed with Platt College for the position of Director of Education at Platt College – North via telephone and videoconference with Kayla Danyeur ("Danyeur"), the Executive Director of Platt College – North. In May 2015, Platt College extended an offer of employment to Bates for the position of Director of Education at Platt College – North; Bates accepted the offer and began his employment as Director of Education.

[1] *Platt College is accredited by the Accrediting Commission of Career Schools and Colleges ("ACCSC") and licensed by the Oklahoma Board of Private Vocational Schools.*

Platt College alleges that starting in January 2016, Bates began to regularly receive counseling regarding his interactions with instructors, staff, and students. Platt College further alleges that on March 22, 2016, Danyeur and the Vice President of Operations for Platt College met with Bates to issue him a Behavior Improvement Plan regarding certain complaints and issues related to Bates' employment as the Director of Education. According to Platt College, Bates refused to sign the Behavior Improvement Plan.

Also beginning in January 2016, the Platt College – North campus consistently failed to meet Ancora Education's benchmark of 5.0% for gross drop percentage. In fact, through August 2016, the student drop rate at Platt College – North increased to 10.4%, more than double the Ancora Education benchmark.

On approximately September 20, 2016, Danyeur became aware that Melody Morgan, a math instructor, had been absent a substantial number of days from a math course.[2] Danyeur states that she raised this issue with Bates, who initially denied any knowledge of Ms. Morgan's absence. Danyeur looked into this issue and determined that Bates had been dishonest about his knowledge of Ms. Morgan's absences. Bates however asserts that he never denied knowledge of Ms. Morgan's absences. Around this same time, Danyeur states she also learned that, in order to accommodate Ms. Morgan's schedule with another employer, Bates had instructed Ms. Morgan to dismiss another class 30 minutes early on Tuesdays and Thursdays to allow her to travel to her other job, and to make up for

[2] *As Director of Education, Bates was responsible for obtaining qualified substitutes to teach the courses offered at Platt College. On each of the seven days that Ms. Morgan was absent, no substitute instructor was obtained. Instead, Bates handed out work and took attendance.*

these shorter classes, Bates instructed Ms. Morgan to extend the duration of classes on Mondays and Wednesdays but to mark students present for the full class, even if they could not or did not attend the complete extended class period. Additionally, to further accommodate Ms. Morgan's schedule, Bates instructed Ms. Morgan to start another math class one hour late on Fridays without any make-up time. Platt College alleges that Bates did not have approval from Danyeur or any other Platt College employee to alter course schedules in this manner. Bates asserts he had the authority to revise the schedule. Platt College contends the method in which Bates allegedly handled covering Ms. Morgan's absences and scheduling issues risked compliance issues with Platt College's ACCSC instruction-hours requirements. Bates asserts there were no compliance violations as measures were taken to ensure class was never cancelled, students received attendance, and a facilitator was present.

According to Platt College, upon discovering Bates' actions regarding Ms. Morgan's courses and failure to disclose his actions to his supervisors, Danyeur and the Vice President of Operations made the decision to terminate Bates' employment. This decision was approved by the COO of Ancora Education. On or about September 30, 2018, Danyeur and the Vice President met with Bates to inform him that Platt College was terminating his employment. Platt College alleges that at that meeting, Danyeur and the Vice President specifically informed Bates that his actions regarding Ms. Morgan's courses, along with his unsatisfactory retention numbers, were the primary reasons for his termination. Bates asserts that at this meeting, the only reason given for his termination

was the retention numbers. Following Bates' termination, Platt College-North hired Saundra Geary, a white female, as Director of Education.

**Analysis**

A. Same actor inference

The Tenth Circuit has adopted the "same actor inference" in employment discrimination cases. *See* Antonio v. Sygma Network, Inc., 458 F.3d 1177, 1183 (10th Cir. 2006). This inference applies in cases where an employee is hired and fired by the same person within a relatively short time period.[3] *See id.* In those cases, "there is a strong inference that the employer's stated reason for acting against the employee is not pretextual." *Id.* (internal quotations and citation omitted). However, "[t]he plaintiff still has the opportunity to present countervailing evidence of pretext, and that 'same actor' evidence gives rise to an inference, rather than a presumption, that no discriminatory animus motivated the employer's actions." *Id.* (internal quotations and citations omitted).

Platt College contends that it is entitled to a same actor inference in this case. Bates asserts that this inference does not apply because Danyeur hired Bates only after being prompted by an African-American female employee[4] to hire him and because Danyeur had never worked with an African-American male in this capacity and was unaware of her own racism. Bates, however, has submitted no evidence to support his assertions. In fact, the evidence shows that Platt College's managerial staff was 14% African-American and that

[3] *The same actor inference has been applied when the hiring and firing occurred up to four years apart. See* Antonio, *458 F.3d at 1183 n.4.*

[4] *The alleged African-American female was the executive director of Platt College's Moore campus.*

it was Danyeur, herself, with the approval of Ancora Education's COO, who made the decision to hire Bates.

Accordingly, since Bates was hired and fired by the same person within 16 months, the same actor inference applies in this case.

B. Race discrimination claim

Without direct evidence of discrimination,[5] the court applies the three-part burden shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under McDonnell Douglas, the plaintiff must first establish a prima facie case of discrimination. *See* DePaula v. Easter Seals El Mirador, 859 F.3d 957, 969 (10th Cir. 2017). In this case, Platt College does not contest, for purposes of its motion for summary judgment, that Bates can establish a prima facie case of race discrimination.

Once a prima facie case has been established, the defendant must then articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See id.* at 970.

> The defendant's burden is exceedingly light, as its stated reasons need only be legitimate and non-discriminatory on their face. The defendant must provide admissible evidence of a legally sufficient explanation for the employment action that raises a genuine issue of material fact as to whether [the defendant] discriminated against the plaintiff. But the defendant's burden is one of production, not persuasion; it can involve no credibility assessment.

*Id.* (internal quotations and citations omitted). Based upon the evidence submitted, Platt College has satisfied its burden of articulating a legitimate, nondiscriminatory reason for Bates' termination. Specifically, Platt College has submitted evidence that Bates was

[5] *Bates has submitted no direct evidence of discrimination.*

terminated for mishandling an instructor's absences, dishonesty and failure to report those absences, improper changing of a course schedule, and failure to meet the student-retention benchmarks.

Finally, after the defendant has articulated a legitimate, nondiscriminatory reason for the adverse employment action, the burden shifts back to the plaintiff to show that the employer's justification is pretextual – not the true reason for the employment decision. *See id.*

> A plaintiff can meet this burden to show pretext in either of two ways: (1) by showing that the proffered reason is factually false or (2) by showing that discrimination was a primary factor in the employer's decision, which is often accomplished by revealing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered reason, such that a reasonable fact finder could deem the employer's reason unworthy of credence.

Tabor v. Hilti, Inc, 703 F.3d 1206, 1218 (10th Cir. 2013) (quotation omitted). Further, the court examines "the facts as they appear to the person making the decision, not the plaintiff's subjective evaluation of the situation." Lobato v. N.M. Env't Dep't, 733 F.3d 1283, 1289 (10th Cir. 2013) (internal quotations, brackets, and citation omitted).

Bates asserts that Platt College's reasons for his termination are pretextual based upon the following: (1) the reasons for his termination have changed over time, (2) certain reasons are not true – he did not mishandle an instructor's absences, did not fail to report said absences, and did not inappropriately reschedule a course to fit an instructor's schedule, (3) white male employees were treated differently than he was, (4) Platt College did not follow its disciplinary policies, (5) his successor was a white female, and (6)

Danyeur had used discriminatory language. Platt College contends that Bates' assertions are insufficient to establish pretext as a matter of law.

Based upon the parties' submissions, and taking into account the same actor inference, Bates has not submitted sufficient evidence to create a genuine issue of fact as to whether Platt College's reasons for Bates' termination were pretextual. First, Bates contends that Platt College has offered different reasons for his termination. Specifically, Bates asserts that during his termination meeting, he was told he was being terminated due to attrition numbers, that Platt College informed the Oklahoma Employment Security Commission that he was terminated for unsatisfactory job performance without misconduct, and in its position statement to the Equal Employment Opportunity Commission, Platt College states that he was terminated for misconduct and integrity violations. "Although inconsistent rationales may constitute pretext, the mere variety of reasons for a termination decision do not alone create pretext." Ruleford v. Tulsa World Publ'g Co., 266 F. App'x 778, 782 (10th Cir. 2008). When the reasons given are not only different but mutually inconsistent, the contradictions are sufficient to establish pretext for the purposes of summary judgment. *See* Hare v. Denver Merch. Mart, Inc., 255 F. App'x 298, 305 (10th Cir. 2007).

While the reasons Platt College have given for Bates' termination are different, based upon the evidence presented they are not mutually inconsistent and clearly do not contradict each other. Further, Platt College has consistently stated that Bates was terminated based upon the attrition numbers, and has, at times, provided additional, but not inconsistent, reasons for the termination. Additionally, unsatisfactory job performance

without misconduct can clearly include the attrition numbers, mishandling an instructor's absences, and improperly changing the schedule for a class. Thus, the different reasons given for Bates' termination are not sufficient to establish pretext for the purpose of summary judgment.

Bates asserts that he did not mishandle or fail to report Ms. Morgan's absences and did not inappropriately reschedule a course to fit Ms. Morgan's schedule.

> [A court's] role isn't to ask whether the employer's decision was wise, fair or correct, but whether [it] honestly believed [the legitimate, nondiscriminatory] reasons [it gave for its conduct] and acted in good faith on those beliefs. Evidence that the employer should not have made the termination decision – for example, that the employer was mistaken or used poor business judgment – is not sufficient to show that the employer's explanation is unworthy of credibility. [O]ur role is to prevent intentional discriminatory . . . practices, not to act as a "super personnel department," second guessing employers' honestly held (even if erroneous) business judgments.

Dewitt v. Sw. Bell Tel. Co., 845 F.3d 1299, 1308 (10th Cir. 2017) (internal quotations and citations omitted). Thus, it is not this court's role to determine whether Platt College was correct in its belief that Ms. Morgan's absences were mishandled and her course inappropriately rescheduled. Such a determination would be second guessing Platt College's business judgment and is not sufficient to show pretext.

Bates also asserts that the Director of Admissions at Platt College-North and the Culinary Arts Program Director at Platt College-North, both white males, are similarly-situated employees who were treated differently than he was. "A similarly situated employee is one who deals with the same supervisor and is subject to the same standards governing performance evaluation and discipline." Green v. New Mexico, 420 F.3d 1189,

1194 (10th Cir. 2005) (quotations omitted). Based upon the evidence submitted, neither employee is similarly-situated to Bates. The white male employees had different job titles, responsibilities, and supervisors. Further, the Culinary Arts Program Director was also terminated for his retention issues within his program shortly after Bates' employment was terminated. Additionally, there were no allegations regarding mishandling teacher absences or altering class schedules against either white male employee. Thus, any difference in treatment of these two employees cannot establish pretext.

Bates contends that Platt College did not follow its disciplinary policies. Bates however has submitted no evidence to support this assertion. Further, Platt College's employee handbook provided that "[c]ertain infractions, unacceptable performance, or behavior may warrant immediate termination without prior disciplinary action." Ancora Education Employee Handbook at 41, attached as Exhibit A to the Affidavit of Donna Gilley. Accordingly, no reasonable jury could find that Platt College failed to follow its policy when terminating Bates' employment.

Bates also contends the successor to his position was an unqualified white female. Bates however has presented no evidence to support his assertion that his successor was unqualified. Further, Platt College has submitted evidence showing that Bates' successor was qualified. Additionally, the EEOC found the successor was qualified for the position. Accordingly, Bates cannot establish pretext based upon who was hired as his successor.

Finally, Bates asserts that certain actions by Danyeur demonstrate discriminatory intent. Specifically, Bates has testified that after interviewing a Nigerian job applicant, Danyeur remarked, "Can you believe that accent?" Bates has further testified that at some

point in time, a black female student was written up for drinking before class, while a white male student was not for similar conduct. Isolated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in termination decisions. *See* Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 531 (10th Cir. 1994). "To establish pretext from such comments, [a plaintiff] must tie the statements to [his] termination." Salazar v. City of Commerce City, 535 F. App'x 692, 697 (10th Cir. 2013). Bates has not submitted any evidence connecting these alleged statements to his termination. Further, Bates has submitted no evidence supporting that the difference in treatment of the two students was due to racial bias, rather than the differing circumstances of the two incidents. Thus, these alleged statements and actions cannot establish pretext.

Accordingly, no reasonable jury could find that Bates' assertions establish pretext, particularly in light of the same actor inference that is applicable in this case. Therefore, Platt College is entitled to summary judgment as to Bates' race discrimination claim.

C. Sex discrimination claim

The same McDonnell Douglas three-part burden shifting framework applies to Bates' sex discrimination claim. However, since Bates' sex discrimination claim is a reverse discrimination claim, Bates must make a stronger showing to establish a prima facie case. *See* Argo v. Blue Cross and Blue Shield of Kan., Inc., 452 F.3d 1193, 1201 (10th Cir. 2006).

> [A] plaintiff alleging reverse discrimination must, in lieu of showing that he belongs to a protected group, establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority. Alternatively, a plaintiff may produce

> facts sufficient to support a reasonable inference that but for plaintiff's status the challenged decision would not have occurred.

*Id.* (internal quotations and citation omitted).

Bates has not satisfied the requisite stronger showing to establish a prima facie case of sex discrimination. Specifically, Bates has presented no evidence of any background circumstances that would support an inference that Platt College is one of those unusual employers who discriminates against the majority. Additionally, Bates has presented no evidence to support a reasonable inference that but for his status his termination would not have occurred. Because Bates cannot establish a prima facie case of sex discrimination, Platt College is entitled to summary judgment as to Bates' sex discrimination claim. Further, for the same reasons set forth above, no reasonable jury could find that Bates can establish pretext, particularly in light of the same actor inference that is applicable in this case, and Platt College is entitled to summary judgment on this basis as well.

**Conclusion**

Defendant Platt College's Motion for Summary Judgment [Doc. #28] is **GRANTED**. Judgment will be entered in favor of defendant.

**IT IS SO ORDERED.**

Dated this 6th day of February, 2019.

JOE HEATON
CHIEF U.S. DISTRICT JUDGE